**ANDERSON & KARRENBERG**
Thomas R. Karrenberg (#3726)
Samantha J. Slark (#10774)
50 West Broadway, Suite 700
Salt Lake City, Utah 84101-2035
Telephone: (801) 534-1700
Facsimile: (801) 364-7697

**Attorneys for Beacon Tower Development, LLC**

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

---

| | |
|---|---|
| BEACON TOWER DEVELOPMENT, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>GREAT BASIN TECHNOLOGIES, LLC., a Utah limited liability company, RICHARD R. MACKERELL, an individual, GARY M. RENLUND, an individual, TRIOX TECHNOLOGIES, INC., a Utah Corporation,<br><br>Defendants. | **AMENDED AND CORRECTED COMPLAINT**<br><br>**(JURY DEMANDED)**<br><br><br>Case No. 2:10cv00099<br>Judge Bruce S. Jenkins |

---

Beacon Tower Development, LLC ("Beacon Tower") hereby complains against Great Basin Technologies, LLC (GBT), Richard R. Mackerell ("Mackerell"), Gary M. Renlund ("Renlund"), and Triox Technologies, Inc. ("Triox Technologies") (collectively "Defendants") and alleges as follows:

## PARTIES

1.      Beacon Tower is a Utah limited liability company with its principal place of business located in Salt Lake County, Utah.

2.      GBT is a Utah limited liability company with its principal place of business located in Salt Lake County, Utah.

3.      Mackerell is an individual and, upon information and belief, a resident of Salt Lake County, Utah.

4.      Renlund is an individual and, upon information and belief, a resident of Salt Lake County, Utah.

5.      Triox Technologies is a Utah corporation with its principal place of business located in Salt Lake County, Utah.

## JURISDICTION AND VENUE

6.      Certain of the claims alleged herein arise under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

7.      This Court has jurisdiction over the federal securities claims actions pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331.

8.      The Court has supplemental jurisdiction over the remaining state law claims, which arise from the same operative facts as the claims arising under the law of the United States and constitute a single case or controversy.  28 U.S.C. § 1367.

9.      Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391, because the acts and violations complained of herein occurred in this District and,

upon information and belief, all of the Defendants reside in this District and/or conduct business in this District.

## FACTUAL ALLEGATIONS

**A.      Background**

10.      GBT is in the business of developing certain technology, including certain technology relating to electric generation ("the Technology").

11.      GBT, in need of investors to continue its business, entered into negotiations with Beacon Tower.  In that context, GBT's member, manager and CEO represented that all of the Intellectual Property ("IP") associated with the Technology was an asset of GBT.

12.      Based on its understanding that the Technology and IP was an asset of GBT's, Beacon Tower agreed to purchase an option to acquire an ownership interest in GBT in consideration for Beacon Tower's agreement to pay $10,000.00 to GBT and to loan $700,000.00 to GBT.

**B.      The March 2008 Agreements**

13.      On or around March 28, 2008, the parties memorialized their agreement by entering in three written agreements:  the Membership Interest Purchase Option Agreement (the "Option Agreement"), the Secured Convertible Promissory Note dated March 28, 2008 (the "March Note"), and the Security Agreement.

14.      In entering into these agreements, GBT represented that it had the full power and authority to enter into and perform the agreements, including but not limited to the agreement to grant Beacon Tower an exclusive license to use the Technology in certain business sectors, as provided for in the March Note and described below.

15.    Under the terms of the Option Agreement, Beacon Tower paid GBT $10,000 and loaned GBT $700,000, pursuant to the terms of the March Note, in consideration for an option to purchase 20% of the membership interests in GBT.

16.    Under the terms of the March Note, GBT promised to repay Beacon Tower the principal amount of the loan ($700,000), on or before March 31, 2009, together with all accrued and unpaid interest, which interest accrues at the rate of eight percent (8%) per annum on the unpaid balance until paid in full and such interest after an event of default accrues at the rate of 18% per annum.

17.    Also under the terms of the March Note, GBT granted Beacon Tower the option to convert all or any portion of the outstanding principal and interest due on the Note into an equity interest in GBT.

18.    GBT also promised under the March Note that, as added consideration, GBT would grant Beacon Tower, upon Beacon Tower's written request, exclusive licenses "for the development, marketing and distribution of products using [GBT's] technology in the following sectors: (1) medical and health care, (2) motor sports, including but not limited to motorcycles, motor bikes, ATV's recreational watercraft, etc.; and (3) portable emergency lighting, including but not limited to flashlights, headlamps, lanterns, back-up and emergency lighting applications, etc."

19.    GBT also promised that the proceeds from the March Note would "be used by [GBT] primarily for the ongoing development of its technologies."

20.    Under the terms of the March Note Beacon Tower was granted the right "to nominate, in its sole discretion, one member of [GBT's] Board of Managers."

21.     GBT's obligation to repay the loan under the March Note was secured by the Security Agreement.

22.     The terms of the Security Agreement provided that to secure prompt and complete payment to Beacon Tower, Beacon Tower was to be granted a "security interest in and lien on" certain real property identified therein.

23.     Pursuant to that provision of the Security Agreement, Mackerell and Renlund executed and delivered to the trustee, Brent A. Andrewsen, a trust deed for the benefit of Beacon Tower on property located at 418 West Winchester Drive, Murray, Utah 84107 ("West Winchester property.")

24.     Also pursuant to that provision, Triox Technologies executed and delivered to the trustee a trust deed for the benefit of Beacon Tower on property located at 14884 Heritagecrest Way #A, Riverton, Utah (the "Heritagecrest property").

25.     The Trust Deeds were duly recorded in the office of the Salt Lake County Recorder on March 27, 2008, as Entry Nos. 10383985 and 10383986, respectively.

26.     Under the Security Agreement, GBT also granted Beacon Tower a security interest in certain equipment and fixtures listed in Exhibit B to that agreement, and in "all proceeds, including Cash Proceeds and Noncash Proceeds, and products of any and all of the Collateral" defined in that agreement.

27.     GBT's obligations under the March Note were also guaranteed by Defendants Richard R. Mackerell, Gary M. Runlund, and Triox Technologies, Inc. (collectively, the "Guarantors"), who signed the March Note as guarantors.

**C.   The Amendments to the March 2008 Agreements**

28.     On or about July 28, 2008, the parties executed the Amended and Restated Membership Interest Purchase Option Agreement ("Amended Option Agreement"), which replaced the Option Agreement, granting Beacon Tower an option to purchase up to 16.8% of the total membership interests in GBT in consideration for payment of $10,000 and an agreement to loan GBT an additional $500,000, increasing the outstanding loan to $1.2 million dollars.

29.     In conjunction with this agreement, the parties entered into the Amended and Restated Secured Convertible Promissory Note Originally Dated March 28, 2008 ("July Note") which, with the exception of the amount owed, contained exactly the same terms as the March Note, and which replaced the March Note.

30.     The parties also entered into an Amended and Restated Security Agreement ("Amended Security Agreement"), amending and restating the terms of the Security Agreement to make it applicable to the July Note.

**D.   The December 2008 Agreements**

31.     On or about December 22, 2008, Beacon Tower loaned GBT an additional $450,000, and GBT executed a second note entitled Secured Convertible Promissory Note ("December Note"), promising to repay Beacon Tower the principal amount of $450,000, on or before March 31, 2009, together with interest at the rate of eight percent (8%) per annum on the unpaid balance until paid in full.

32.     Other than the amounts due, the July Note and the December Note contain the exact same terms.

33.     Concurrent with execution of the December Note, the parties entered into the First Amendment to Amended and Restated Membership Interest Purchase Option Agreement ("First Amendment to Amended Option Agreement"), which amended the Amended Option Agreement by reducing the total percentage of GBT's membership shares that Beacon Tower could purchase from 16.8% to 14.55%.  A true and accurate copy of the First Amendment to Amended Option Agreement is attached hereto as Exhibit H and incorporated herein by this reference.

34.     At that time, the parties also executed the First Amendment to Amended and Restated Security Agreement ("First Amendment to Amended Security Agreement"), which amended the Amended Security Agreement by extending it to also apply to the December Note. A true and accurate copy of the First Amendment to Amended Security Agreement is attached hereto as Exhibit I and incorporated herein by this reference.

35.     Defendants Mackerell, Renlund, and Triox Technologies also signed the December Note as guarantors, thereby guaranteeing the obligations of GBT under that Note.

36.     The July and December Notes are now past due and Beacon Tower has not received any payment towards the amount due and owing under the Notes.

**E.     GBT's and Mackerell's False Representations Regarding GBT's Ownership of the Technology and Authority to Grant the Exclusive License**

37.     During the negotiation leading up to the parties entering into these agreements, GBT represented it was the owner of the IP and the Technology and that it had the full right and ability to provide Beacon Tower an exclusive license to develop, market and distribute that technology in certain sectors.

38. Specifically, on February 14, 2008, Richard Mackerell, the managing member and CEO of GBT, sent Jeff Chivers, a member and manager of Beacon Tower, an e-mail representing that "all the intellectual property is an asset of Great Basin Technology."

39. Additionally in various PowerPoint presentations that GBT provided to Beacon Tower and its representatives, GBT represented that the Technology as well as any advancements to the Technology belonged to or would belong to GBT.

40. Upon information and belief, Beacon Tower alleges that the representations identified in ¶¶ 38 and 39 were false.

41. Additionally, in the agreements entered into between the parties, GBT represented that it had the full power and authority to enter into and perform the agreements, including but not limited to the agreement to grant Beacon Tower exclusive licenses to use the Technology in certain business sectors.

42. On or about April 22, 2009, Beacon Tower requested in writing that GBT grant Beacon Tower the exclusive license rights provided for in the July and December Notes.

43. GBT proposed a license agreement that improperly attempted to limit the term of the license to three (3) years and the scope of the license, both of which were objectionable to Beacon Tower.

44. Contrary to and in breach of the terms of the Notes, GBT has not been willing to enter into a proper license agreement satisfying its obligation to grant Beacon Tower the exclusive license rights provided for under the Notes.

45.     In further discussions relating to the licensing of the Technology, GBT recently claimed that TTI Associates is the owner of some of the IP and Technology, and that GBT does not have authority to grant the license it is contractually obligated to grant to Beacon Tower.

46.     On November 25, 2009, Beacon Tower notified GBT that it had exercised its right under the Notes to convert $70,000 of the outstanding principal indebtedness due under the Notes to a 1% membership interest in GBT.

47.     GBT has never acknowledged the conversion and, upon information and belief, Beacon Tower alleges that GBT has not amended its Limited Liability Company organizational documents to acknowledge Beacon Tower's membership interest.

48.     Additionally, Beacon Tower has the right under the Notes to nominate one member to GBT's Board of Managers, and Beacon Tower has done so, nominating Jeff Chivers to GBT's Board.

49.     GBT is obligated under the Notes to amend its Operating Agreement or other governing document to reflect Mr. Chivers's membership on the Board of Managers, and to permit Mr. Chivers to participate in Board matters appropriately, but GBT has failed to do so. GBT has failed to give Mr. Chivers notice of Board action or to participate in or vote on such Board matters as the approval of loans, capital transactions, transfer of technology, sale of membership equity, or other such major operating decisions.

50.     GBT is prohibited under the Notes from granting any rights to any other party with respect to the Collateral under the Notes, and from creating or allowing to exist any lien on the Collateral, without the written consent of Beacon Tower. On information and belief, Beacon Tower alleges that GBT has violated this negative covenant.

## FIRST CAUSE OF ACTION
### (Section 10(b) and Rule 10b-5 – Against GBT and Mackerell)

51.     Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

52.     As described above, GBT and Mackerell misrepresented material facts and omitted material information necessary under the circumstances to keep their statements from being misleading in connection with Beacon Tower purchasing an option and loaning GBT a total of $1.65 million.

53.     Beacon Tower was misled into believing that it had an option to purchase an equity interest in a company that owned all the IP and the Technology, and that it could acquire an exclusive license to use that technology in certain respects.  Beacon Tower has now been informed that GBT does not own all the rights to the IP and the Technology, and that GBT does not have the full power and authority to grant Beacon Tower the exclusive license, as it otherwise represented.

54.     Upon information and belief, GBT and Mackerell acted knowingly and recklessly, knowing that GBT did not own all the rights to the IP and the Technology and that GBT did not have the full power and authority to grant Beacon Tower the exclusive license provided for in the Notes.

55.     Beacon Tower justifiably and reasonably relied on the misrepresentations or omissions in paying for the option and loaning GBT the $1.65 million, and it would not have entered into the transaction with GBT if it had been aware of the truth in this regard.

56.     GBT and Mackerell used instrumentalities of interstate commerce in connection with the sale of the option rights and in making the misrepresentations as to GBT's ownership of

the rights to the IP and the Technology and its authority and power to perform under its agreements with Beacon Tower.

57.     The conduct of GBT and Mackerell caused injury or loss to Beacon Tower in that it purchased an option to acquire an equity interest in GBT that it otherwise would not have purchased.

58.     As a direct and proximate result of GBT and Mackerell's violation of § 10(b) of the Exchange Act and SEC Rule 10b-5, Beacon Tower has sustained damages in an amount to be determined at the trial of this matter.

**SECOND CAUSE OF ACTION**
**(Utah Uniform Securities Act – Against GBT and Mackerell)**

59.     Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

60.     GBT and Mackerell have offered or sold securities to Beacon Tower by means of untrue statements or omissions of material fact necessary to make the transactions with Beacon Tower not misleading.

61.     Beacon Tower was unaware of the untrue statements and omissions at the time they entered into the Option Agreement and related agreements, as thereafter amended.

62.     The conduct of GBT and Mackerell herein was in violation of Utah Code Ann. § 61-1-1(2), and were undertaken or carried out recklessly or negligently.

63.     Beacon Tower reasonably relied upon the accuracy of the representation described above and would not have entered into the Option Agreement and loan transaction if it had been aware that the statements made by GBT and Mackerell were false.

64.     Beacon Tower has been injured in reliance on and as a result of these materially false and misleading statements and omissions, and has incurred damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Fraudulent Misrepresentation – Against GBT and Mackerell)**

65.     Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

66.     As set forth above, to induce Beacon Tower to enter into the Option Agreements and make the loans to GBT, GBT and Mackerell made misrepresentations and omissions of material fact to Beacon Tower regarding GBT's ownership of the IP and the Technology and its ability to provide an exclusive license for development, marketing and distribution of the Technology.

67.     GBT and Mackerell made these representations knowing they were false, or at least made them recklessly knowing that they had insufficient knowledge upon which to base such representations.

68.     Beacon Tower, acting reasonably and in ignorance of the falsity of the representations, relied on them in entering into the Option Agreement and amendments thereto, and in entering into the loan transactions.

69.     As a proximate result of its reasonable reliance upon these representations, Beacon Tower has suffered injury and incurred damage in an amount to be determined at trial.

70.     GBT and Mackerell made the false representations and omitted to disclose material representations intentionally or with reckless disregard for the rights of Beacon Tower and as such, Beacon Tower is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Negligent Misrepresentation – Against GBT and Mackerell)**

71.  Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

72.  As set forth above, to induce Beacon Tower to enter into the Option Agreements and make the loans, GBT and Mackerell negligently made false representations and omissions of material fact to Beacon Tower regarding GBT's ownership of the IP and the Technology and GBT's ability to provide an exclusive license for development, marketing and distribution of the Technology.

73.  GBT and Mackerell had a pecuniary interest in having Beacon Tower enter into the Option Agreement and amendments thereto and make the loans it made to GBT, and were in a superior position to Beacon Tower regarding the facts relating to GBT's ownership of the Technology and its ability to provide the exclusive license provided for in the parties' agreements.

74.  GBT and Mackerell made these false representations expecting Beacon Tower to rely and act on those representations.

75.  Beacon Tower reasonably relied on these representations in entering into the Option Agreement and making the loans to GBT.

76.  As a proximate result of its reliance upon these representations, Beacon Tower has suffered injury and incurred damages in an amount to be determined at trial.

77.  GBT and Mackerell made the false representations and omitted to disclose material representations intentionally or with reckless disregard for the rights of Beacon Tower and as such, Beacon Tower is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION
### (Judicial Foreclosure of Trust Deed)

78.     Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

79.     GBT executed three Notes, promising to pay Beacon Tower the total principal amount of $1.65 million, plus all applicable interest, on or before March 31, 2009.

80.     To secure payment of the indebtedness under the Notes, and as required by the terms of the Security Agreement, Mackerell, Renlund and Triox Technologies executed and delivered to Trustee Brent Andrewsen, for the benefit of Beacon Tower, the Trust Deeds for the West Winchester and Heritagecrest properties.

81.     The Note and Guaranties are currently in default.

82.     The amount due and owing under the Notes is $1.65 million, plus accrued interest.

83.     Beacon Tower has declared the Notes in default and has sent notices of default to GBT and the guarantors.

84.     Beacon Tower elects to foreclose on the deed of trust.

85.     Accordingly, Beacon Tower is entitled to an Order and Judgment of this Court foreclosing each of the Guarantors' interests in the West Winchester and Heritagecrest properties and directing that those properties be sold as provided by law to satisfy, to the extent possible, the amount due and owing on the Notes.

## SIXTH CAUSE OF ACTION
**(Breach of Contract – Against GBT, Mackerell, Renlund, and Triox Technologies)**

86.     Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

87.     GBT signed the Notes promising to pay Beacon Tower the principal sum of $1.65 million, on or before March 31, 2009, plus interest, as set forth above.

88.     Additionally, upon information and belief, Beacon Tower alleges that GBT is also in breach of the Note agreements by:

   (a)     using the proceeds of the loans contrary to the express terms of the Notes;

   (b)     failing to grant Beacon Tower its 1% membership interest in GBT;

   (c)     failing to amend its governing documents to appoint Beacon Tower's nominee to GBT's Board of Managers and/or to permit Beacon Tower's nominee to participate appropriately in Board actions or decisions; and

   (d)     granting rights to the Collateral under the Notes to third parties and/or suffering to exist any lien on the Collateral.

89.     Under the terms of the Notes, each of the breaches identified herein is an Event of Default under the terms of the Notes.

90.     Mackerell, Renlund and Triox Technologies signed the Notes as guarantors, guaranteeing GBT's payment of those amounts.

91.     GBT has failed to make payments on the Notes, and is in default.

92.     Demand has been made for the Guarantors to make payment of the amounts due under the Notes.

93.     To date, no payment has been made, and GBT and the Guarantors are in breach of their obligations under the Notes.

94.     As a result of these breaches, Beacon Tower has suffered damage in an amount to be determined at trial.

95.     Accordingly, to the extent that there is any deficiency after the sale of the West Winchester and Heritagecrest properties, Beacon Tower is entitled to judgment against GBT and each of the Guarantors, jointly and severally, for any deficiency.

96.     Additionally, Beacon Tower is entitled to a judgment and an order compelling GBT to specifically perform and honor its obligations to grant Beacon Tower a 1% membership interest in GBT and to have its nominee appointed to GBT's Board of Managers and to participate fully as a member of the Board.

## SEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment and Order Establishing Beacon Tower's Rights to Foreclose on Personal Property – GBT)

97.     Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

98.     As set forth above, GBT has failed to make timely payment on the Notes and for that reason and the other breaches set forth above is in default pursuant to the terms of the Notes.

99.     Beacon Tower declared GBT in default of the Notes and demanded immediate payment of all amounts due on the Notes.

100.     GBT failed to make payment on the Notes or provide Beacon Tower with any of the Collateral that operate as security for the obligations under the Notes.

101.    A controversy now exists between the parties concerning Beacon Tower's rights to the Collateral under the Security Agreement as security for GBT's obligations under the Notes to satisfy the amounts due and owing on the Notes, including to take immediate possession of the equipment and fixtures identified in Exhibit B to the Security Agreement, and to receive all Proceeds and products from the Collateral and its right to assume management control of GBT and its assets as set forth in ¶ 5.1 of the Security Agreement.

102.    Beacon Tower is entitled to judgment pursuant to Utah Code Ann. § 78B-6-1 et seq. and Rule 57 of the Utah Rules of Civil Procedure declaring that GBT is in default under the Notes and entitled to an order or writ of execution permitting Beacon Tower to receive all Proceeds from the Collateral and to take immediate possession of the Collateral, including the equipment and fixtures listed in Exhibit B of the Security Agreement, and to dispose of that Collateral as provided for by law to satisfy the amounts due and owing on the Notes and to assume management control of GBT and its assets as set forth in ¶ 5.1 of the Security Agreement.

## EIGHTH CAUSE OF ACTION
**(Declaratory Judgment – Scope and Term of License Against GBT)**

103.    Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

104.    As set forth above, Beacon Tower is entitled to a license for the "development, marketing and distribution of products using [GBT's] technology" in the medical and healthcare, motor sports, and portable and emergency lighting sectors.

105.    On or about April 22, 2009, Beacon Tower demanded that GBT provide it with the exclusive license rights provided for under the terms of the Notes.

106.    GBT proposed a License Agreement with terms significantly different from the terms set forth in the Note.

107.    Beacon Tower objected to the terms of the proposed License Agreement, and did not sign the agreement.

108.    A dispute has now arisen between the parties concerning the scope of Beacon Tower's license under the Notes.

109.    Declaratory relief is necessary and appropriate to determine the scope and term of the license Beacon Tower is entitled to receive under the Notes.

110.    Accordingly, Beacon Tower seeks a judgment declaring GBT in breach because the proposed License Agreement does not comply with the terms of the Notes, and that the terms of the Notes require GBT to provide Beacon Tower a license for the "development, marketing and distribution of products using [GBT's] technology" in the medical and healthcare, motor sports, and portable and emergency lighting sectors, without any other limitations, with such license to expire on the expiration of the last patent(s) issued from any patent application(s) within the scope of the license.

### NINTH CAUSE OF ACTION
**(Breach of Contract –Failure to Provide License**
**Against GBT)**

111.    Beacon Tower incorporates by reference the allegations contained in all preceding paragraphs as if fully set forth herein.

112.    Under the terms of the Notes, GBT is required to provide Beacon Tower an exclusive license for the "development, marketing and distribution of products using [GBT's] technology" in the medical and healthcare, motor sports, and portable and emergency lighting sectors.

113.    GBT has failed to provide Beacon Tower with this license, in breach of the terms of the Notes.

114.    Because the license concerns GBT's technology, it is unique, and an award of damages will not fully compensate Beacon Tower for its losses.

115.    Accordingly, Beacon Tower is entitled to a judgment and order compelling GBT to specifically perform and honor its obligation to provide a license in accordance with the terms of the Notes.

116.    As an alternative remedy to specific performance, GBT's breach caused Beacon Tower damage in an amount to be determined at trial, including but not limited to the lost profits for the amounts Beacon Tower would have made if provided with the license as required under the terms of the Notes.

## JURY DEMAND

Trial by jury is hereby demanded on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

A.    A Judgment against Defendants GBT and Mackerell requiring them to return to Beacon Tower the amounts Beacon Tower paid for the option it purchased to acquire an ownership interest in GBT; awarding Beacon Tower its damages for violation of Section 10(b) of

the Exchange Act, the SEC's Rule 10-b(5), and Section 61-1-1 of the Utah Uniform Securities

Act, including treble damages pursuant to the Utah Uniform Securities Act.

B.      A Judgment against Defendants GBT and Mackerell awarding Beacon Tower its

damages for fraudulent and negligent misrepresentation, including an award of punitive

damages.

C.      A Judgment and Order that:

      a.      sets forth the amount due and owing to Beacon Tower, including but not

         limited to the amounts owed under the Notes, and attorneys fees and costs

         incurred in bringing this action and foreclosing on the properties;

      b.      the Clerk of the Court issue a special execution and order of sale, directing

         the Sheriff of Salt Lake County, Utah, to seize and sell the West

         Winchester and Heritagecrest properties under execution, according to the

         laws and the practices of this State and Court, at which sale any parties to

         this action may become a purchaser;

      c.      directs the sheriff to apply the proceeds of the sale to pay first the sale

         costs and thereafter pay to Beacon Tower the remaining proceeds to the

         extent necessary to satisfy all sums adjudged due, and any funds

         remaining after said sale to be deposited with the Clerk of the Court

         subject to the jurisdiction and further Order of this Court;

      d.      upon completion of the sale, the Sheriff of Salt Lake County, Utah, be

         directed to issue and deliver to the purchaser a certificate of sale; that upon

         the expiration of the six (6) month period of redemption, if the West

Winchester and Heritagecrest properties are not redeemed, that said Sheriff be directed to issue and deliver to the holder of the certificate of sale, a deed to the property, free and clear of all claim and demands of Defendants;

D.    A judgment in favor of Beacon Tower and against GBT and the Guarantors, finding GBT and the Guarantors in breach of their obligations for failing to make payment of amounts due under the Notes and for GBT's other breaches of the Note Agreement, and awarding Beacon Tower its damages, including any deficiency remaining after the sale of the West Winchester and Heritagecrest properties;

E.    A Declaratory Judgment finding GBT is in default of its obligations under the Notes and an order establishing that Beacon Tower is entitled to a writ of execution or order permitting Beacon Tower to receive all Proceeds from the Collateral and to take immediate possession of the Collateral, including the equipment and fixtures listed in Exhibit B of the Security Agreement, and dispose of that Collateral as provided for by law to satisfy any amounts due and owing on the Notes and an order of the court directing that Beacon Tower is entitled to assume management control of GBT and its assets as set forth in ¶ 5.1 of the Security Agreement and requiring GBT to specifically perform its obligations to grant Beacon Tower a 1% member interest in GBT and to appoint Beacon Tower's nominee to GBT's Board of Managers;

F.    A Declaratory Judgment that Beacon Tower is entitled to an exclusive license for the development, marketing and distribution of products using GBT's technology in the medical and healthcare, motor sports, and portable and emergency lighting sectors, without any other limitations, with such license to expire on the expiration of the last patent(s) issued from any

patent application(s) within the scope of the license, in accordance with the terms of the Note;

G.      An Order of specific performance requiring GBT to provide Beacon Tower with a license for the development, marketing and distribution of products using GBT's technology in the medical and healthcare, motor sports, and portable and emergency lighting sectors, without any other limitations, with such license to expire on the expiration of the last patent(s) issued from any patent application(s) within the scope of the license, or, alternatively, a judgment in favor of Beacon Tower and against GBT finding GBT in breach of the Notes for failure to provide a license as required by the terms of the Notes, and an award of damages, including but not limited to the lost profits for the amounts Beacon Tower would have made if the license had been granted as required under the terms of the Notes;

H.      Pre- and post-judgment interest, as provided by law; and

I.      An award of costs and reasonable attorneys' fees for bringing this action, and such other relief as the Court deems just and equitable.

DATED:      May 25, 2010

                          ANDERSON & KARRENBERG


                          /s/ Thomas R. Karrenberg
                          Thomas R. Karrenberg
                          Samantha J. Slark
                          **Attorneys for Beacon Tower Development, LLC**


Plaintiff's address:

161 East 5600 South, Suite 106
Murray, Utah 84107