FILED
U.S. DISTRICT COURT
2011 MAR -3 P 4: 32
DISTRICT OF UTAH
BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| BEACON TOWER DEVELOPMENT, LLC, a Utah limited liability company, | Civil No. 2:10-CV-00099-BSJ |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| vs. | |
| GREAT BASIN TECHNOLOGIES, LLC, a Utah limited liability company, RICHARD R. MACKERELL, an individual, GARY M. RENLUND, an individual, TRIOX TECHNOLOGIES, INC., a Utah Corporation, | |
| Defendants. | |

\* \* \* \* \* \* \* \* \*

Before this Court for decision is Plaintiff Beacon Tower Development, LLC's ("Beacon Tower") motion for partial summary judgment on its sixth cause of action and for summary judgment on its fifth and seventh causes of action (the "Motion")(dkt. no. 15).[1]

The Court set the matter for argument on August 9, 2010. Beacon Tower and Defendant Great Basin Technologies, LLC ("Great Basin") submitted memoranda in support of their positions prior to oral argument, and with permission of the Court, submitted supplemental

---

[1] The sixth cause of action is for breach of contract for failure to pay the Notes when due. The fifth cause of action is for judicial foreclosure of real property used as security for the Notes and held under two trust deeds. The seventh cause of action is for declaratory judgment and order establishing Plaintiff's rights to foreclose on personal property pledged as security for the Notes. (Complaint, filed Feb. 9, 2010 (dkt. no. 1), at ¶¶ 78-102.)

1

memoranda following the hearing.[2] Additional argument on the Motion was heard on August 13, 2010.[3] The parties were again permitted by the Court to submit supplemental memoranda following the hearing, and both parties did so.[4]

Appearing at the August 9th and 13th hearings were Thomas R. Karrenberg and Samantha J. Slark on behalf of the Plaintiff and James Logan Ahlstrom on behalf of the Defendants.

Having carefully considered the parties' memoranda and arguments, as well as the law and facts relevant to the Motion, the Court enters the following Order.

## I. Background

Beginning in March 2008, Beacon Tower and Great Basin entered into several transactions related to Great Basin's development of "nuclear magnetic spin" technology and its applications.[5] Essentially, Beacon Tower provided a secured loan to Great Basin and in return Great Basin provided to Beacon Tower an option to purchase a certain percentage membership interest in the company, licensing rights for the technology, and the option to convert its debt interest—the loan principal plus interest—to an additional equity interest. Three documents were originally executed to memorialize the parties' agreement: (1) a membership interest option

---

[2] (Beacon's Mem. in Support of Mot. for Partial Summ. J. on its Sixth Cause of Action and for Summ. J. on its Fifth and Seventh Causes of Action, filed May 14, 2010 (dkt. no 16) ("Beacon's Memo"); Mem. in Opp. to Beacon's Mot., filed Jun. 18, 2010 (dkt. no. 23) ("Response"); Reply to Response, filed Jul. 9, 2010 (dkt. no. 30) ("Reply"); Supp. Mem. in Opp. to Mot., filed Aug. 11, 2010 (dkt. no. 38); Supp. Mem. in Support of Mot., filed Aug. 11, 2010 (dkt. no. 39).)

[3] (*See* Minute Entry, filed Aug. 13, 2010 (dkt. no. 57).)

[4] (2nd Supp. Mem. in Opp. to Beacon's Mot., filed Aug. 19, 2010 (dkt. no. 52); Resp. to 2nd Supp. Mem. in Opp. to Beacon's Mot., filed Aug. 20, 2010 (dkt. no. 53).)

[5] (*See* Decl. of Jeffrey Chivers, filed May 14, 2010 (dkt. no. 17), at Ex. C (titled "Amended and Restated Membership Interest Purchase Option Agreement" and hereinafter referred to as "Amended Option Agreement".)

agreement;[6] (2) a secured convertible promissory note;[7] and (3) a security agreement.[8] Two trust deeds were also executed to hold the real property securing the note in trust.[9] The option agreement, promissory note, and security agreement were subsequently amended.[10] Also, a second secured promissory note was executed in December 2010.[11] The differences between the various versions of the agreements are of no consequence in this case.

Under each of the relevant promissory notes ("Notes")[12] Beacon Tower has an option to convert the principal and interest owed by Great Basin to a specified percentage equity interest in the company.[13] The parties disagree whether Beacon Tower's optional conversion rights have been exercised. Great Basin claims that a letter sent on April 22, 2009 from Jeffrey Chivers at Beacon Tower to Richard Mackerell at Great Basin constitutes an exercise of Beacon Tower's

---

[6] (Decl. of Jeffrey Chivers (dkt. no. 17), at Ex. A, 1-2 (Beacon Tower was granted an option to purchase up to 20 percent of the total membership interests in Great Basin. In consideration for the option, Beacon Tower paid a $10,000 option price and loaned Great Basin $700,000. The exercise price for each one percent membership interest was $243,500).)

[7] (Id. at Ex. B (providing additional details on the loan, granting Beacon Tower an exclusive license for the development and distribution of products using Great Basin's technology in certain sectors, and granting Beacon Tower an optional right to convert its debt interest into a 10 percent equity interest in Great Basin).)

[8] (Id. at Ex. F (granting Beacon Tower a security interest in certain real and personal properties owned by the guarantors to secure the $700,000 loan from Beacon Tower to Great Basin).)

[9] (Id. at Exs. I and J (the "Trust Deeds").)

[10] (Id. at Exs. C (Amended Option Agreement), D (Amended and Restated Secured Convertible Promissory Note Originally Dated March 28, 2008) ("July Note"), G (Amended and Restated Security Agreement), and H (First Amendment to Amended and Restated Security Agreement); Decl. of Richard Mackerell, filed Jun. 18, 2010 (dkt. no. 24), at Ex. C (First Amendment to Amended and Restated Membership Interest Purchase Option Agreement).)

[11] (Decl. of Jeffrey Chivers (dkt. no. 17), at Ex. E (Secured Convertible Promissory Note, dated Dec. 22, 2008) ("December Note").)

[12] (July Note (dkt. no. 17-4); December Note (dkt. no. 17-5).)

[13] (Under the Notes, Beacon Tower is entitled to convert the principal and interest owed to a 15.45 percent equity interest in Great Basin: 2.25 percent under the December Note and 13.2 percent under the July Note.)

3

conversion option while Beacon Tower claims it does not. The letter says in pertinent part:

> [N]ow is the right time to (a) enter into the licenses agreed to in paragraph 7 (c) . . . and (b) exercise our option to convert the Notes to equity. This may be more particularly true in light of the fact that the Maturity Date for the Notes passed on March 31, 2009, and thus the Notes technically are in default. By this letter, we hereby make written request that Great Basin Technologies grant to Beacon Tower the licenses provided for and as outlined in the Notes. -We would like to begin the process of converting the Notes to equity as outlined in section 8 of the Notes. Accordingly, please provide us with the disclosure provide[d] for in Section 8(c) (such section requires disclosure of the outstanding ownership of the company and any voting rights associated with such ownership). Under separate cover, we will surrender the Notes and make the appropriate written conversion request.[14]

Over the next several months the parties had several discussions about a potential joint venture.[15] The parties also began negotiating the contours of the license agreement referenced in the April 22nd Letter.[16] The negotiations continued until November 2009 when the parties reached an impasse on the joint venture and scope of the licensing agreement.[17]

On November 19, 2009, two Notices of Default and Election to Sell ("Notices of Default") were filed with the County Recorder by Brent Andrewsen, the trustee for the real property pledged as security on the Notes. The Notices state that "at the instruction of the Beneficiary of the Deed of Trust [Beacon Tower] , [Andrewsen] hereby declares all sums secured thereby immediately due and payable and elects to cause the Property to be sold to satisfy the obligations secured thereby as permitted by law."[18] The property has not yet been sold.

---

[14] (Decl. of Richard Mackerell (dkt. no. 24), at Ex. E ("April 22nd Letter").)

[15] (*Id.* at ¶ 16; *see also* Hearing Transcript, dated Aug. 9, 2010 (dkt. no. 55), at 11:12-17.)

[16] (Decl. of Richard Mackerell (dkt. no. 24), at ¶ 16.)

[17] (*Id.* at ¶¶ 19-20 & Exs. H, I, L, M.)

[18] (Decl. of Jeffrey Chivers (dkt. no. 17), at Exs. K and L.)

Shortly thereafter, on November 25, 2009, Beacon Tower sent a letter to Great Basin titled "Exercise of Equity Conversion Rights Partial Surrender of Note."[19] The letter indicates that Beacon Tower is exercising its option under the Notes to convert $70,000 of the outstanding principal indebtedness to a one percent membership interest in Great Basin.[20]

Plaintiff Beacon Tower commenced this action on February 9, 2010 seeking compensatory damages, punitive damages, declaratory judgments, an order of sale of trust property, and specific performance.[21]

## II. Analysis

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue. An issue of fact is material 'if under the substantive law it is essential to the proper disposition of the claim.'" *Thomas v. Metro. Life Ins. Co.*, No. 09-6207, 2011 U.S. App. LEXIS 2024, at *11-12 (10th Cir. Feb. 2, 2011) (*citing respectively Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) and *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). Furthermore, the evidence and its reasonable inferences are to be viewed in the light most favorable to the non-moving party. *Id.*

---

[19] (*Id.* at Ex. M.)

[20] (*Id.*)

[21] (Complaint (dkt. no. 1), at 19-22.)

## A. Motion for Partial Summary Judgment on Sixth Cause of Action

Movant Beacon Tower contends that Great Basin is in default of its obligations under the terms of the Notes and seeks partial summary judgment on the issue of default. The parties agree that whether Great Basin is in default hinges on whether Beacon Tower converted its debt interest under the Notes—the right to have the principal and interest repaid—to an equity membership interest in Great Basin.[22] The parties also agree that whether the optional conversion rights were exercised depends on interpretation of the contractual provision on conversion.

The unambiguous language of the contract reflects the intent of the parties and indicates that Beacon Tower did not exercise its conversion rights and Great Basin is therefore in default as a matter of law.

Contracts in the State of Utah are interpreted under the plain meaning rule, which requires courts to examine the language of a contract to determine meaning and intent. *Glenn v. Reese*, 2009 UT 80, ¶10, 225 P.3d 185. "Where the language of the contract is unambiguous . . . the contract may be interpreted as a matter of law." *Id.* Additionally, strict adherence to the terms of an option clause is required in order for exercise of the option to be effective. *See Cummings v. England*, 12 Utah 2d 69, 362 P.2d 584, 586 (Utah 1961); 1 Richard A. Lord, *Williston on Contracts* § 5:18 (4th Ed. 2007). Mere communication of intent to exercise an option is insufficient to create a bilateral contract between the parties where the contract provides a specific procedure on how to exercise the option. *Lincoln Land & Dev. Co. v. Thompson*, 26

---

[22] (Hearing Transcript, Aug. 9, 2010 (dkt. no. 55), at 45:16-22; *see* Resp. to 2nd Supp. Mem. in Opp. to Beacon's Mot. (dkt. no. 53), at 10.)

Utah 2d 324, 489 P.2d 426, 428 (Utah 1971).

It is undisputed that as of March 31, 2009, Great Basin had not fulfilled its obligation to repay the principal and interest under the Notes.[23] Indeed, as of the August 2009 hearings, the principal and interest remained unpaid.[24] It is also undisputed that on April 22, 2009, Beacon Tower notified Great Basin of its intent to exercise its option to convert.[25] What is disputed, however, is whether Beacon Tower actually did exercise its option to convert and thereby extinguished Great Basin's obligation to repay the principal and interest otherwise due under the Notes. The relevant portions of the Notes provide as follows:

> 8. Conversion.
> (a) Optional Conversion Right. Until such time as all of the Obligations under this Note are paid in full, Holder shall have the option, exercisable in its sole discretion, to convert all or any portion of the outstanding principal and interest due on this Note into an equity interest that shall represent thirteen and two tenths percent (13.2%)[26] of all equity interests in the Company (the "Conversion").
>
> (b) Conversion Rate and Procedure. A Conversion of this Note *shall be deemed to have been effected* as of the close of business on the date on which *this Note was surrendered by Holder* at the principal office of the Company *accompanied by a written conversion request* indicating that Holder desires to exercise his conversion rights hereunder.[27]
>
> (c) Capitalization and Voting Rights. Upon the request of Holder, and prior to the Conversion, the Company will provide to Holder a disclosure of authorized and outstanding securities of the Company, and of the voting rights associated with all

---

[23] (Hearing Transcript, Aug. 13, 2010 (dkt. no. 54), at 84:22-24.)

[24] (*Id.* at 84:25-85:3.)

[25] (Hearing Transcript, Aug. 9, 2010 (dkt. no. 55), at 8:15-16.)

[26] (The optional conversion right in the December Note is 2.25 percent.)

[27] (The excluded portion of the option deals with the rates of conversion which are irrelevant to this analysis.)

7

outstanding securities.[28]

The language of section 8 is unambiguous and the intent of the parties can be gleaned from the plain meaning of that language. The Court interprets the contract to mean what it says: Beacon Tower's *exercise* of its conversion rights is *effected* when Beacon Tower delivers to Great Basin the Notes and a written conversion request. Contrary to Great Basin's argument that the exercise of the option and conversion are distinguishable parts of a bifurcated process, exercise of the option and the conversion itself are one in the same under this contract. Moreover, a specific procedure for conversion is articulated in section 8(b)—surrender of the Notes and delivery of a written conversion request—and the law requires strict adherence to those terms. The option is not exercised and the conversion is not complete until the procedures for converting the Notes have been performed.

It is undisputed that Beacon Tower has neither surrendered the Notes nor provided a written conversion request for 99 percent of its debt interest in Great Basin[29]—the April 22 letter merely indicates Beacon Tower's intent to exercise the option.[30] Therefore, the Notes in their entirety were not converted to a membership interest in Great Basin and, as a matter of law, Great Basin is in default on the Notes for failing to repay the principal and interest when due.

---

[28] (July Note (dkt. no. 17-4), at § 8; December Note (dkt. no. 17-5), at § 8.)

[29] Both parties agree that Beacon Tower exercised its option to convert $70,000 of indebtedness to a one percent membership interest via the November 25, 2009 letter sent from Beacon Tower to Great Basin. (Complaint (dkt. no. 1), at ¶ 46; Answer (dkt. no. 9), at ¶ 46 (denying 1 percent equity interest); *but see* Hearing Transcript, dated Aug. 9, 2010 (dkt. no. 55), at 43:21-23 ("So they are an owner of at least one percent of the company as well, by virtue of that conversion.").)

[30] (Hearing Transcript, dated Aug. 13, 2010 (dkt. no. 54), at 85:5-9; Resp. to 2nd Mem. in Opp. to Beacon's Mot. (dkt. no. 53), at 10.)

### B. Motion for Summary Judgment on Fifth and Seventh Causes of Action

Movant Beacon Tower seeks summary judgment on its actions for: (1) judicial foreclosure and (2) declaratory judgment and an order establishing its rights to foreclose on personal property listed as collateral in the security agreements.

Summary judgment is a tool used by courts to streamline the litigation process. With that policy in mind, providing a judicial remedy where the parties are already pursuing a contractual remedy proves unnecessary and duplicative.

Under the Trust Deeds the beneficiary has several remedy options upon default. Paragraphs 14 and 15 of the Trust Deeds state that the beneficiary may initiate a trustee's sale of the trust property and specify the procedure to do so.[31] Paragraph 16 also provides the beneficiary with the option to seek judicial foreclosure.[32] These provisions are consistent with Utah law, which offers trustees a choice between a trustee's sale or judicial foreclosure. *See* Utah Code Ann. § 57-1-23 (LexisNexis 2010).

It is undisputed that on November 19, 2009, two Notices of Default were filed with the County Recorder by Brent Andrewson, trustee for the real property pledged as security on the Notes.[33] Such notice is necessary only to pursue a trustee's sale. Thus, Beacon Tower elected the remedy available under Paragraphs 14 and 15: a trustee's sale of the real property.

---

[31] (Decl. of Jeffrey Chivers (dkt. no. 17), at Exs. I, ¶¶ 14-15 and J, ¶¶ 14-15. When referring to a "trustee's sale" this Court means a sale of the trust property in the manner provided in Utah Code Ann. §§ 57-1-24 and 57-1-27.)

[32] (*Id.* at ¶ 16. When referring to "judicial foreclosure" this Court means foreclosure of the trust deed in the manner provided by law for the foreclosure of mortgages of real property. The foreclosure process for mortgages of real property is outlined in Utah Code Ann. 78B-6-901 to -909.)

[33] (Decl. of Jeffrey Chivers (dkt. no. 17), at Exs. K and L.)

To grant a judicial foreclosure where a trustee's sale has already been initiated would merely confuse the process already in motion and perhaps result in additional delay. Moreover, Utah Code § 78B-6-901 requires a judicial foreclosure judgment to include the amount due. At this point, insufficient argument has been heard as to what amount is due under the Notes.

Furthermore, summary judgment on foreclosure of the personal property is premature. Beacon Tower has explicitly stated that it will only seek the sale of the personal property if the revenue from the sale of the real property does not cover the debt owed by Great Basin.[34] Until the trustee's sale is complete, the amount of any such deficiency remains unknown. Therefore,

**IT IS ORDERED** that Plaintiff's motion for partial summary judgment seeking a declaration that Great Basin is in default for failure to pay the Notes when due is **GRANTED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment on its fifth and seventh causes of action is **DENIED**.

DATED this 2 day of March, 2011.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge

---

[34] (Hearing Transcript, August 9, 2010 (dkt. no. 55), at 19:23-20:4.)